IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COREY VICTOR ROBERSON, | § | |
| #25967-177 | § | |
|               Petitioner, | § | |
| | § | |
| v. | § | 3:14-CV-0485-O-BK |
| | § | (3:11-CR-0165-O-1) |
| UNITED STATES OF AMERICA, | § | |
|               Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order* 3, Petitioner's *pro se* motion to vacate sentence under 28 U.S.C. § 2255 was referred to the United States Magistrate Judge. For the reasons that follow, it is recommended that the section 2255 motion be denied.

**I. BACKGROUND**

In 2011, Petitioner was indicted for being a felon in possession of a firearm. Following a suppression hearing, the Court concluded that the DART security officers had reasonable suspicion for the *Terry* stop and frisk that led to the discovery of the firearm and, thus, that firearm was admissible. [Crim. Doc. 52 at 77-80]. Petitioner subsequently waived his right to a jury trial and elected to instead proceed with a bench trial, thereby preserving his right to appeal the denial of his motion to suppress. Petitioner was convicted and sentenced to 36 months' imprisonment. *United States v. Roberson*, No. 3:11-CR-0165-O-1 (N.D. Tex. 2011), *aff'd*, 496 Fed. App'x. 390, 392 (5th Cir. 2012).

In the six grounds raised in his timely section 2255 motion, Petitioner asserts ineffective assistance of counsel at trial and on appeal. [Doc. 3 at 4-5]. The government argues the section 2255 motion lacks merit. [Doc. 7]. Petitioner has not filed a reply.

## II. ANALYSIS

After conviction and exhaustion or waiver of the right to direct appeal, the Court presumes that a petitioner stands fairly and finally convicted.  See *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (citing *United States v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (*en banc*)).  Under section 2255, a petitioner can collaterally challenge his conviction only on constitutional or jurisdictional grounds.  See *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001).

### A. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984).  Failure to establish either deficient performance or prejudice defeats the claim.  *Id.* at 697.  To prove the deficient performance prong of the *Strickland* test, a petitioner must show that counsel made errors so serious that he or she was not functioning as the counsel guaranteed by the Sixth Amendment.  *Id.* at 687.  The proper measure of attorney performance is reasonableness under prevailing professional norms.  *Id.* at 688.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  *Id.*  To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

To prove that appellate counsel rendered ineffective assistance, a petitioner must show that the decision not to raise an issue on appeal fell below an objective standard of reasonableness and that he was prejudiced.  See *United States v. Phillips*, 210 F.3d 345, 348 (5th

Cir. 2000). "The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh,* 873 F.2d 830, 840 (5th Cir. 1989) (citing *Jones v. Barnes,* 463 U.S. 745, 751 (1983)). Indeed, it is counsel's professional duty to choose among potential issues, according to his judgment as to their merit and his tactical approach to maximize the likelihood of success on appeal. *Jones,* 463 U.S. at 752. Moreover, to prove that appellate counsel's alleged error was prejudicial, the petitioner must show that the court "'would have afforded relief on appeal.'" *United States v. Reinhart,* 357 F.3d 521, 530 (5th Cir. 2004) (quoting *United States v. Phillips,* 210 F.3d 345, 350 (5th Cir. 2000)).

### *Failure to Raise Equal Protection and Racial Profiling Claims (Claim 1)*

Petitioner asserts trial and appellate counsel rendered ineffective assistance in failing to raise equal protection and racial-profiling claims stemming from the *Terry* stop and frisk that led to the discovery of the firearm. [Doc. 3 at 4, 6]. He argues that he was "unlawfully singled-out" for a crime without any evidence merely because he was a black male wearing a bandana that covered his face except for his eyes. [Doc. 3 at 2, 3, 6]. However, he has not pled, much less shown, that counsel's performance at trial or on appeal was deficient and that it prejudiced him. In fact, Petitioner pleads no facts in support of his ineffectiveness claim, apart from twice mentioning the operative phrase, "ineffective assistance." [Doc. 3 at 4, 9]. Thus, Petitioner's assertion is clearly vague and insufficient to plead a Sixth Amendment claim. *See United States v. Pineda,* 988 F.2d 22, 23 (5th Cir. 1993) (declining to consider vague ineffective assistance of counsel claim). Without any specific allegations of what counsel did or failed to do, Petitioner cannot raise an issue of constitutional import. Indeed, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *Id.* at 23 (quotations and quoted case omitted); *see also Ross v. Estelle,* 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the

record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").

Nevertheless, Petitioner's ineffective assistance of counsel claim fails on the merits. The record confirms that counsel's performance at the suppression hearing and on direct appeal was not constitutionally deficient. Indeed, Petitioner's defense at the suppression hearing and on appeal focused entirely on whether the DART security officer had reasonable suspicion to detain and frisk Petitioner under the Fourth Amendment. *Roberson*, 496 Fed. App'x. at 391. Upon review of the record. The Court determines that defense counsel not only filed a well-reasoned motion to suppress, but also effectively cross examined the three government witnesses who testified at the suppression hearing. [Crim. Doc. 20; Crim. Doc. 52 at 21, 53, 70]. Appellate counsel also ably and comprehensively argued on appeal that the *Terry* stop and search were racially motivated, which in essence presented the same argument raised in this section 2255 motion. [Doc. 8 at 60-63 (*Appellant's Initial Brief*)]. Moreover, the civil cases on which Petitioner relies to assert an equal protection violation are clearly inapplicable in the context of a criminal prosecution. [Doc. 3 at 5-8].

The fact that trial and appellate counsel were unsuccessful in their efforts does not mean that they were legally deficient. *See Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983). Even assuming deficient performance, Petitioner has not shown prejudice -- namely that the result of the suppression hearing would have been different, *Strickland*, 466 U.S. at 694, or that the equal protection and racial profiling claims (he now urges) were clearly stronger than the issues appellate counsel did pursue on direct appeal. *See Smith v. Robbins*, 528 U.S. 259, 288 (2000) ("[g]enerally, only when ignored issues are clearly stronger than those presented, will the

presumption of effective assistance of counsel be overcome") (cited case omitted). Regarding the issues counsel presented, the court of appeals concluded

> Roberson argues that DART police improperly relied on his race when forming reasonable suspicion. Inasmuch as Roberson seeks to argue that race cannot be used in a reasonable suspicion calculus where it was an improper or unjust basis for a seizure or search (such as in racial profiling cases), he states the obvious. Here, however, race was used only as a way to describe the suspect, and there is no evidence that it was used for any other purpose. Roberson himself acknowledges that race may be used for identification purposes in reasonable suspicion cases. Therefore, race was not an improper basis for Officer Ibarra's *Terry* stop and frisk.

*Roberson*, 496 Fed. App'x. at 393.

In summary, Petitioner has failed to demonstrate that counsel's performance at trial and on appeal was deficient and that he was prejudiced. Accordingly, his first claim fails.[1]

*Failure to Investigate and Call Witnesses (Claim 2)*

Next, Petitioner asserts counsel rendered ineffective assistance in failing to investigate or call as a witness Ladarold Brown, another black man who was on the same DART train as Petitioner and who was also stopped and frisked. [Doc. 3 at 10]. While Petitioner submits an interview report with Mr. Brown [Doc. 3 at 17], he fails to show that Brown would have been available to testify, would have testified, and that his testimony would have been favorable. *See Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense). As to the favorability of the witness's testimony, the interview report

---

[1] As a stand-alone Fourth Amendment claim, this ground fares no better because Petitioner had a full and fair opportunity to litigate his claim. *See United States v. Ishmael*, 343 F.3d 741, 742 (5th Cir. 2003) (extending *Stone v. Powell*, 428 U.S. 465, 494 (1976), to section 2255 cases).

establishes that Petitioner <u>consented</u> to a search of his person.  Under these facts, it is arguable that Brown's testimony would not have advanced Petitioner's claims of an illegal search.  Indeed, the substance of Brown's interview suggests that counsel's failure to call him as a witness was the result of sound trial strategy.  *See Strickland*, 466 U.S. at 687 (in evaluating an attorney's performance, there is a "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance," or that under the circumstances the challenged action might be considered sound trial strategy).

Additionally, Petitioner has presented only bare allegations of counsel's failure to investigate.  Petitioner has failed to demonstrate with the required level of specificity what the investigation would have revealed and how it would have altered the outcome of the suppression hearing.  *See United States v. Curtis*, 769 F.3d 271, 276 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 691 (2014) (cited cases omitted) ("To establish [a] failure to investigate claim, [a defendant] must allege with specificity what the investigation would have revealed *and how it would have benefitted him.*") (quoted case omitted, emphasis in original).  Because Petitioner's conclusory allegations are insufficient to raise a cognizable claim of ineffective assistance of counsel, his second claim has no merit.

*<u>Failure to Seek Reduction of Sentence based on Mental Health Condition</u> (Claim 3)*

Petitioner also asserts that defense counsel failed to investigate his mental health condition and request a reduction under United States Sentencing Guideline (U.S.S.G.) § 5H1.3.[2]  [Doc. 3 at 10-11].  However, he offers nothing beyond his own conclusory assertion to show that

---

[2] While Petitioner cites to U.S.S.G. § 5H1.2, "Educational and Vocational Skills," he intended to rely on section 5H1.3, "Mental and Emotional Conditions."

his mental health condition was present to an "unusual degree" as required by section 5H1.3[3], and that, had counsel requested a reduction under that section, the result of the proceeding would have been different.  *See Glover v. United States*, 531 U.S. 198, 200, 203-204 (2001) (in the context of ineffective assistance of counsel at sentencing, the petitioner must demonstrate that the sentence was increased by the deficient performance of defense counsel).  At Petitioner's sentencing hearing, defense counsel advised the Court that Petitioner required special education, yet still constantly struggled with school, and counsel requested a sentence at the low end of the guideline range.  [Crim. Doc. 54 at 5].  Additionally, the Presentence Investigation Report (PSR), which the Court reviewed before sentencing, summarized in detail Petitioner's mental and emotional condition.  [Crim. Doc. 38-1 at 11-12].  Accordingly, Petitioner's third claim for relief is unavailing and should be denied.

*Failure to Raise Confrontation Clause Claim (Claim 4)*

Next, Petitioner asserts trial and appellate counsel failed to raise a Confrontation Clause claim.  In support, he avers that "the arresting officer made statements that at least two individuals on the DART train allegedly accused him of potentially committing a felony crime of 'robbery' against other passengers aboard the Train."   [Doc. 3 at 12].  He "contends that he was not afforded an opportunity at any time to confront the alleged accusers." *Id.*

Petitioner misstates the record.  The DART rail driver testified that after she reported to Control seeing two black males with their faces covered by bandanas and, subsequently, a couple of passengers approached, but because she believed they were going to advise her about the same

---

[3] U.S.S.G. § 5H1.3 provides that mental and emotional conditions may be relevant in determining whether a departure is warranted if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the Guidelines.

suspicious passengers, she merely acknowledged by nodding that she had already taken care of the situation. [Crim. Doc. 52 at 51-53]. Indeed, she specifically recounted on cross-examination that neither of the passengers who approached her subsequently ever spoke to her. [Crim. Doc. 52 at 51]. Moreover, the first DART officer to respond testified only regarding the report received from police dispatch that there were two black men wearing bandanas over their faces whom other passengers feared might commit a robbery. [Crim. Doc. 52 at 5, 12, 27-28]. The officer also testified that after boarding the train, he observed the looks of fright and non-verbal cues of passengers as to the location of the suspects. [Crim. Doc. 52 at 9-10]. No statement of any passenger was recounted during the officers' testimony.

Prior to the start of his trial, Petitioner indicated to the Court some confusion regarding an alleged 911 call and passenger statements, averring:

> They [the officer and conductor] both said that [a 911 call was made] and the officer said he had talked to two people that was on the train, he said he talked to the two passengers on the train who have called 911, but I don't remember him talking to nobody on the passenger except me and the other person who was sitting behind me.

[Crim. Doc. 53 at 8-9]. The Court advised, "Well, let's just see what the evidence shows in this case." [Crim. Doc. 53 at 9]. Contrary to Petitioner's recollection, however, the record clearly shows that no witness testified to any hearsay statements made by other DART passengers.

Under these facts, Petitioner's reliance on the Supreme Court's holding in *Crawford v. Washington*, 541 U.S. 36, 59 (2004), is misplaced.[4] Because no testimonial statements of any passengers were recounted by any witnesses at the hearing on the motion to suppress or during

---

[4] Under the Sixth Amendment, a criminal defendant "enjoy[s] the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. The Supreme Court held in *Crawford* that the Confrontation Clause bars testimonial statements of a witness who does not appear at trial unless: (1) he was unavailable to testify; and (2) the defendant had a prior opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 59.

the bench trial, there was no Confrontation Clause violation.  Thus, neither trail nor appellate counsel was ineffective for failing to raise such a meritless claim.

*Failure to Challenge Perjured Statements (Claim 5)*

Petitioner also asserts trial and appellate counsel failed to challenge the perjured testimony of Officer Fernando Ibarra and Train Operator Gwendolyn Peoples.  [Doc. 3 at 12-13]. He contends:

> Ibarra consistently provided false statements regarding matters such as (1) whether there were one or more accusers for purpose of obtaining probable cause to investigate the alleged criminal matters, if any; and (2) lied about Petitioner's behavior during officer's detaining of Petitioner falsely accusing Petitioner of becoming agitated and making suspicious eye movements as though he was trying to possibly escape.  Peoples made false statements regarding whether she actually spoke personally with any of the alleged passengers of whom [sic] allegedly were the accusers of Petitioner's alleged wrong doings.  When cross examined as to whether she ever spoke to any of the passengers she state[d] she had not, which was inconsistent with her statement during Petitioner's Motion to Suppress Hearing.

[Doc. 3 at 13].

Upon careful review of the witnesses' testimony at the suppression hearing and at trial, the Court finds that these conclusory contentions lack merit.  Petitioner's assertions regarding the perjured testimony are, at most, based solely on allegedly contradictory testimony or prior inconsistent statements, which are insufficient to prove perjury.  *United States v. Neal*, 245 F.3d 790, 790 (5th Cir. 2000) (citing *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990) ("Contradictory testimony does not prove perjury.").  Moreover, Petitioner's allegations do not establish a violation of his right to due process.  *See Knox v. Johnson*, 224 F.3d 470, 477 (5th Cir. 2000) (quoting *Giglio v. United States*, 405 U.S. 150, 153 (1972)) (to prove a Due Process violation based on the prosecution's reliance on false testimony, the defendant must establish: "(1) that a witness for the State testified falsely; (2) that such testimony was material; and (3)

that the prosecution knew that the testimony was false."); *see also Napue v. Illinois*, 360 U.S. 264, 269, 271 (1959); *United States v. Davis*, 609 F.3d 663, 696 (5th Cir. 2010). Therefore, this claim fails.

*Prosecutorial Misconduct (Claim 6)*

Lastly, Petitioner maintains the Government failed to disclose the recordings of the calls between the train operator and the arresting security officer. He also claims the Government failed to disclose the unidentified passengers who allegedly communicated with the train operator and who, as Petitioner asserts, "were the initiators of the alleged criminal investigation." [Doc. 3 at 14-15]. Petitioner has offered nothing to establish that the prosecutor suppressed evidence that was favorable and material to his defense. *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (to establish a *Brady* violation, a petitioner must prove (1) the prosecutor suppressed or withheld evidence (2) that was favorable and (3) material to his guilt or punishment). At a minimum, he fails to explain how the evidence (the phone recordings and passengers' identity) was favorable to him, either because it was exculpatory or impeaching. *See Pitonyak v. Stephens*, 732 F.3d 525, 532 (5th Cir. 2013). Nor does he expound on how the evidence was material. *United States v. Garcia*, 567 F.3d 721, 735 (5th Cir. 2009) ("'Evidence is material under *Brady* when there is a 'reasonable probability' that the outcome of the trial would have been different if the suppressed evidence had been disclosed to the defendant.'"). Thus, Petitioner has failed to demonstrate that counsel rendered deficient representation under *Brady*. Accordingly, Petitioner's sixth claim is unavailing.

## B. Evidentiary Hearing Not Required

Petitioner requests an evidentiary hearing to develop his claims. [Doc. 3 at 9, 15]. However, "[w]hen the files and records of a case make manifest the lack of merit of a section

2255 [motion], the trial court is not required to hold an evidentiary hearing." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981); *see also Cervantes*, 132 F.3d at 1111 (petitioner was not entitled to an evidentiary hearing because he did not meet his burden of proof under section 2255).  Accordingly, because Petitioner's claims lack merit, for the reasons stated above, no evidentiary hearing is required in this section 2255 proceeding.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that Petitioner's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 be **DENIED**.

SIGNED March 2, 2015.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE